**FILED IN CHAMBERS**
U.S.D.C ATLANTA

Date: Nov 12 2024

**KEVIN P. WEIMER** , Clerk

By: Sonya Nuckolls

Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Tristan Cox

**CRIMINAL COMPLAINT**

Case Number:  1:24-MJ-0989

**UNDER SEAL**

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.  On or about April 7, 2024 in Fulton County, in the Northern District of Georgia, defendant(s) did, in a facility in which persons are held in custody by direction of and pursuant to a contract and agreement with the head of a federal department and agency, knowingly engage in a sexual act and attempt to engage in a sexual act, that is, contact between the defendant's mouth and Individual 1's penis, with Individual 1 without Individual 1's consent,

in violation of Title 18, United States Code, Section(s) 2242(3).

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.     Yes

_____
Signature of Complainant
Richard Schroff

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

November 12, 2024
Date

at   Atlanta, Georgia
City and State

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Bret R. Hobson / 2024R00783 /
Bret.Hobson@usdoj.gov

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Richard Schroff, hereby depose and say under penalty of perjury:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the U.S. Department of Justice (DOJ), Office of Inspector General (OIG) and have been since December of 2022.  Immediately prior to working for the OIG, I was a Special Agent with the Federal Bureau of Investigation (FBI), where I started in July of 2014.  In my final assignment with the FBI, I was a Supervisory Special Agent serving as a program manager for the FBI's money laundering and bank fraud investigations.  Before that I was a Special Agent assigned to the FBI's Seattle Division.  I am a graduate of the FBI Academy and have completed training in the collection of physical and digital evidence and in reviewing financial and communication records.  I have experience conducting a wide range of investigations, including into public corruption, civil rights crimes, complex financial crimes, internet crimes against children, violent crimes, narcotics crimes, and sexual assaults, including those committed under the color of law.  I am currently assigned to the OIG's Atlanta Area Office and am assigned to conduct investigations in several states in the U.S. Southeast, including Georgia.

2.      As an OIG Special Agent, I am tasked with conducting criminal and administrative investigations of DOJ employees who have committed crimes or serious misconduct and of other people who have committed crimes that affect the operation of DOJ.  This responsibility encompasses all employees and contractors of DOJ, including those working for all component agencies such as the Federal Bureau of Prisons (BOP). I am authorized by DOJ to conduct a wide range of investigative activity to include making arrests and applying for search warrants.

3.     I submit this affidavit for the purpose of showing that a violation of 18 U.S.C § 2242(3) (sexual contact without consent) has been committed by Tristan COX (COX), a former employee of an entity that contracted with BOP maintain custody of federal offenders and provide them residential reentry center services.

4.     The facts set forth in this affidavit are based on my personal knowledge, my review of relevant records, and information I have obtained from other law enforcement officers who also have been participating in this investigation.  As this affidavit is intended to show only that there is sufficient probable cause for the requested warrant, it does not set forth all my knowledge about this matter.

### PROBABLE CAUSE

5.     On April 12, 2024, DOJ-OIG received a complaint from the BOP alleging that COX, a BOP contract employee working at the Atlanta Residential Reentry Center (RRC), sexually assaulted a resident, hereinafter referred to as Individual 1, who was under COX's care and custody.

*The Atlanta RRC*

6.     The BOP contracts with various non-governmental organizations to run RRCs, also known as halfway houses, to aid inmates who are nearing release from federal incarceration.  Once inmates are in the custody of the RRC, they are referred to as residents.

7.     The Atlanta RRC is run by Dismas Charities (Dismas), a faith-based non-profit organization headquartered in Louisville, Kentucky, that is one of the largest RRC operators in the country.

8.     Since at least July 1, 2023, Dismas has had a contract with the BOP to operate the Atlanta RRC through June 30, 2028.  Under the contract, Dismas agreed to

maintain custody of federal offenders and provide them residential reentry center services.

9. Accordingly, the Atlanta RRC is a facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any federal department or agency.

*COX's Position at the Atlanta RRC*

10. I obtained COX's personnel file from Dismas and learned that Dismas hired him on or around March 19, 2022, to serve as a Residence Monitor (RM) at the Atlanta RRC.

11. The position description for an RM stated that the employee is "[r]esponsible for the custody, security, control and maintenance of the facility and residents." In other words, COX had custodial, supervisory, and/or disciplinary authority over the residents in the Atlanta RRC.

12. The position description further stated that RMs are responsible for complying with all agency policies and applicable procedures.

13. COX signed his position description on March 19, 2022.

14. COX also signed a "Staff/Volunteer Acknowledgement Sexual Abuse Prevention and Intervention" form that same day. This form was an acknowledgement of certain provisions of the Prison Rape Elimination Act (PREA) of 2003 and stated in

3

bold, all capitalized, and underlined text: "THERE IS NO SUCH THING AS CONSENSUAL SEX BETWEEN YOU AND A RESIDENT!!!"

15. During his tenure at Dismas, COX received PREA training on April 1, 2022, August 9, 2022, October 22, 2022, and August 22, 2023.

*The Victim*

16. In 2008, Individual 1 was convicted of armed bank robbery and possession of a firearm in the commission of a felony.  He was sentenced to 210 months in BOP custody and 5 years of supervised release.

17. In the Spring of 2024, after Individual 1 violated the terms of his supervised release, he was placed at the Atlanta RRC.

*The April 7, 2024 Sexual Assault and Subsequent Investigation*

18. On April 8, 2024, Individual 1 reported to Dismas management that early in the morning on April 7, 2024, COX had performed oral sex on Individual 1 against Individual 1's will in a supply closet inside the Atlanta RRC.

19. COX had been assigned to work as an RM during the overnight shift that included the early morning hours of April 7, 2024.  During his shift, COX had custodial, supervisory, and disciplinary authority over the residents of the Atlanta RRC, including Individual 1.

20. Following Individual 1's report, Dismas management took a statement from Individual 1 and contacted the Fulton County Police Department (FCPD)

21. A responding FCPD officer interviewed Individual 1.  During the interview, Individual 1 reported as follows:

a. COX approached Individual 1 in one of the common areas of the RRC and asked him to help with some tasks in the supply closet.

4

b. Individual 1 went to the supply closet with COX.

c. Once in the closet, COX asked Individual 1 if he had been molested as a child and then twice asked Individual 1 to "pull it out."

d. COX then proceeded to fondle Individual 1's genitalia though his boxer shorts, briefly performed oral sex on Individual 1 two times, and had Individual 1 suck on his nipple.

e. Individual 1 noticed that when COX pulled up his shirt to have his nipple sucked, there was a tattoo above COX's left nipple that started with a cursive letter "N."

f. COX told Individual 1 he wanted to see him "squirt," but Individual 1 did not ejaculate during the encounter.

g. Individual 1 did not want a sexual encounter with COX.

22. During the interview, Individual 1 further explained, "I was afraid that, at this point, if [COX]'s going this far with this, then what is he to say that I didn't assault him, back there? What is he to say that I didn't do something else, that I didn't? Say, if I didn't comply, I feared repercussion for not complying. Because I go back to prison for the rest of my life if this - you know what I'm saying? I cannot have another mistake. That's been clearly made to me. So, I'm in fear -."

23. Individual 1 also told the officer that he had saved the underwear he was wearing when COX assaulted him, so the officer collected the underwear as evidence.

24. Footage from the RRC's surveillance cameras confirmed that at approximately 1:42am on April 7, 2024, COX and Individual 1 walked from the common area where Individual 1 had been sitting with another resident toward the supply closet. COX and Individual 1 walked off camera into the area where the supply

5

closet is and remained off camera for approximately 28 minutes. Individual 1 then left the area of the closet at approximately 2:10am, and COX left the area at approximately 2:32am. Although there were no cameras inside the supply closet nor any that provided direct footage of the door to the closet, the RRC's cameras did show the only non-locked approach to the closet.

25. On April 9, 2024, Individual 1 reported to the rape crisis center at Grady Memorial Hospital for a sexual assault examination.

26. On April 12, 2024, an FCPD detective interviewed COX. In the interview, which was Mirandized and recorded, COX denied having any sort of sexual encounter with Individual 1. The detective asked COX three times if there was any reason that COX's saliva would be present on Individual 1's genitalia or in his boxers. COX said that it should not be and denied that it would be each time he was asked.

27. At the end of COX's interview, the detective presented him with a search warrant issued in the Magistrate Court of Fulton County allowing the detective to collect a buccal swab from COX and to locate tattoos on COX's pectoral area. An FCPD crime technician obtained the buccal swab from COX's mouth, and COX showed the tattoos on his chest to the detective and the crime technician. They located a tattoo of "NKJ" above COX's left nipple. COX speculated that Individual 1 may have seen the tattoo because he had his top two buttons undone and readjusted a necklace while he was bending over.

28. DOJ-OIG arranged for the sexual assault kit used to collect specimens from Individual 1 during his examination at the hospital, the underwear Individual 1

was wearing during the alleged assault, and the buccal swabs collected from COX to be sent to the FBI Laboratory for analysis and comparison of DNA.

29.　　The FBI Laboratory reported the results of the analysis and comparison as follows:  On swabbing from a stain on the inside crotch region of Individual 1's underwear, the FBI Lab located male DNA that it interpreted as originating from three individuals.  Individual 1 was an assumed contributor, and testing revealed there was "very strong support for inclusion"[1] of COX being a contributor to the DNA.  In addition, on swabbing from the outside crotch region of Individual 1's underwear, the FBI Lab located male DNA that it interpreted as originating from two individuals, one of whom is assumed to be Individual 1.  Testing revealed there was again "very strong support for inclusion" of COX being the other contributor to the DNA.  The other swabs collected from Individual 1 during the examination at Grady (from his penis and mouth) contained no DNA other than his own.

## CONCLUSION

30.　　Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that COX has committed a violation of 18 U.S.C. § 2242(3) (sexual contact without consent).

---

[1] This is the highest level under the FBI Lab's current system.